```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
```
- - - - - - - - - - - - - - - - - - -X

MARC A. PERGAMENT, CHAPTER 7 TRUSTEE IN
THE BANKRUPTCY CASE OF SIGNS & DESIGNS,
LTD.,

            ORDER
      Plaintiff,

            CV 2011-2797 (ARR)(MDG)
  - against -

MURTAZA LADAK, et al.,

      Defendants.

- - - - - - - - - - - - - - - - - - -X

  This action was commenced by Manhattan Signs & Designs, Ltd. ("MSD") and Eugene Nifenecker, the former CEO, president and sole shareholder and director of MSD, against M.S. Signs, Inc. and its officers, Murtaza Ladak and Kevin Cherashore, who were former employees and officers of MSD. The original two plaintiffs alleged that Mr. Ladak and Mr. Cherashore breached their fiduciary duty and defrauded MSD by retaining payments made by MSD customers for work completed using MSD resources and staff. In an Amended Complaint filed on August 5, 2011, only MSD is named as plaintiff. Messrs. Ladak and Cherashore alleged in their answer to the Amended Complaint that Mr. Nifenecker appropriated the missing funds and asserted counterclaims against MSD and Mr. Nifenecker for unpaid wages owing to both individual defendants.

  After an involuntary petition of bankruptcy was filed against MSD, Marc Pergament, the Trustee appointed for MSD in the bankruptcy action, was substituted as plaintiff. Defendants subsequently moved to disqualify Joseph Sferrazza and his firm,

Sferrazza & Keenan ("S&K"), as counsel for Mr. Nifenecker claiming a conflict of interest arising from S&K's prior representation of MSD and in the bankruptcy proceedings involving MSD.

BACKGROUND

At commencement of this action, Eugene Nifenecker represented the two original plaintiffs, MSD and himself; Douglas Lieberman later appeared on behalf of both plaintiffs. When Mr. Nifenecker was sued as a counterclaim defendant after being dropped in the Amended Complaint, Mr. Lieberman again represented both MSD and Mr. Nifenecker.

Relatively little discovery took place before an involuntary Chapter 7 bankruptcy petition was filed against MSD in the Eastern District of New York. See Letter to the Court from Douglas Lieberman dated Feb. 21, 2012 (ct. doc. 24). All proceedings in this matter were stayed until August 3, 2012, after Marc Pergament was appointed the Trustee of MSD and was substituted as party plaintiff in this action in place of MSD. See Minute Entry filed Apr. 5, 2012; Order of the Court filed July 20, 2012; Minute Entry filed July 27, 2012. While the case was stayed, Mr. Sferrazza replaced Mr. Lieberman as counsel for Mr. Nifenecker. See Minute Entry filed July 11, 2012.

Defendants argue in the present disqualification motion that S&K should not be permitted to represent both MSD in the bankruptcy action and Mr. Nifenecker in this action because MSD's interests are directly contrary to that of Mr. Nifenecker, in that

Mr. Nifenecker is likely guilty of the wrongs of which they have been accused and because S&K previously represented MSD and an affiliate wholly owned by Mr. Nifenecker. Defs.' Memo. in Support of Mot. to Disqualify (ct. doc. 45-16). Besides disputing these contentions, Mr. Nifenecker argues that defendants lack standing to make this motion, which is more appropriately raised by the Trustee in the bankruptcy court. Aff. of Eugene Nifenecker (ct. doc. 47). The Trustee states that while he does not believe that the evidence currently available establishes that Mr. Nifenecker is guilty of embezzling funds from MSD or that S&K's prior representation requires the disqualification of Mr. Sferrazza in this action, he supports disqualification of S&K in the interest of ensuring the undivided loyalty of MSD's counsel in the bankruptcy action. Aff. of Mark Pergament (ct. doc. 48).

## DISCUSSION

I. Standing

As an initial matter, this Court finds that defendants have standing to make this motion. Courts rarely deny disqualification motions for lack of standing because "[p]rinciples of standing are matters of public policy, and in the area of regulating the practice of law, those principles must be flexible enough to allow a court to insure that the integrity of proceedings before it is maintained, especially where a court recognizes the existence of a conflict." Paladino v. Skate Safe, Inc., 28 Misc.3d 1227(A), 2010 WL 3359550, at *4 (N.Y. Sup. 2010). Because resolution of

potential conflicts of interest is essential to maintaining the integrity of court proceedings, "[e]thical concerns dictate that other persons, especially other attorneys, be permitted to raise the issue . . ." Planning & Control, Inc. v. MTS Group, Inc., 1992 WL 51569 (S.D.N.Y. 1992); see also Principal Life Ins. Co. v. McMillan, 2010 WL 2075873, at *1 n.1 (E.D.N.Y. 2010) ("all attorneys, regardless of their position in the litigation, have an obligation to call to the Court's attention possible disciplinary rule violations") (internal quotations omitted). This Court thus declines to deny defendants' motion on the basis of standing.

II. Disqualification

Federal courts have inherent power to disqualify attorneys in order to "preserve the integrity of the adversary process." Bd. of Educ. v. Nyquist, 590 F.2d 1241, 1246 (2d Cir. 1979). In determining disqualification motions, courts must balance two competing concerns: "the client's right to select counsel of his choice [and] the need to maintain the integrity and high standards of the legal profession." Nordwind v. Rowland, 584 F.3d 420, 435 (2d Cir. 2009). Disqualification is warranted only where "an attorney's conduct tends to taint the underlying trial." GSI Commerce Solutions, Inc. v. Babycenter LLC, 618 F.3d 204, 209 (2d Cir. 2010). Although the movant has a high burden of proof, "any doubt is to be resolved in favor of disqualification." Hull v. Celanese Corp., 513 F.2d 568, 571 (2d Cir. 1975). However, "because courts must guard against the tactical use of motions to

disqualify counsel, they are subject to fairly strict scrutiny." Murray v. Metropolitan Life Ins. Co., 583 F.3d 173, 178 (2d Cir. 2009) (internal quotations removed).

Specifically, defendants argue that S&K should be disqualified from representing Mr. Nifenecker in this action because of a conflict arising from the firm's prior representation of MSD and its affiliate, SolarSmart, of which Mr. Nifenecker was the sole shareholder and CEO. Ct. doc. 45-16, at 7-10. They also argue that a conflict arises from S&K's concurrent representation of Mr. Nifenecker in this action and MSD in the bankruptcy proceedings because Mr. Nifenecker engaged in conduct adverse to MSD.

### A. Successive Representation

Different standards apply in determining motions for disqualification depending on whether the representation is concurrent or successive. Hempstead Video, Inc. v. Incorporated Village of Valley Stream, 409 F.3d 127, 133 (2d Cir. 2005). In cases of successive representation, a former client may seek to prohibit an attorney from representing another client if:

> (1) the moving party is a former client of the adverse party's counsel;
>
> (2) there is a substantial relationship between the subject matter of the counsel's prior representation of the moving party and the issues in the present lawsuit; and
>
> (3) the attorney whose disqualification is sought had access to, or was likely to have had access to, relevant privileged information in the course of his prior representation of the client.

Nordwind, 584 F.3d at 435. The central concern underlying disqualification based on successive representation is the possibility "however slight, that confidential information acquired from a client during a previous relationship may subsequently be used to the client's disadvantage." Stratton v. Wallce, 2012 WL 3201666, at *3 (W.D.N.Y. 2012) (quoting Emle Indust., Inc. v. Patentex, Inc. 478 F.2d 562, 571 (2d Cir. 1973)).

Defendants contend that there is a substantial relationship between S&K's representation of MSD and SolarSmart because "the damages [MSD] allegedly suffered were a direct, proximate and foreseeable result of the conduct of Nifenecker during the periods that MSD was represented by Sferrazza & Keenan." Id. at 8.

Setting aside defendants' inability to satisfy the first factor that they be former clients of S&K, defendants also fail to meet the second criteria – the existence of "substantial relationship" between the subjects of the prior and current matters." A "substantial relationship" exists where "the relationship between the issues in the prior and present cases is 'patently clear' . . . 'identical' or 'essentially the same.'" Bank of America, N.A. v. Klein, 2011 WL 63910, at *4 (D.Conn. 2011) (quoting Gov't of India v. Cook Indus., Inc., 569 F.2d 737, 737 (2d Cir. 1978)). The Second Circuit has not provided definitive guidelines on what issues in the past and current actions must be "identical" or "essentially the same," but it is clear that the relevant inquiry extends beyond "whether there are common legal claims or theories (. . .) to whether there are

common factual issues that are material to the adjudication of the prior and current representations." Mitchell v. Metropolitan Life Ins. Co., Inc., 2002 WL 441194, at *8 (S.D.N.Y. 2002); see also Employers Ins. Co. v. Munich Reinsurance America, Inc., 2011 WL 1873123, at *5 (S.D.N.Y. 2011) ("In this context, 'issues' does not mean procedural issues . . . but factual issues on which confidential information concerning the client was likely acquired"); Revise Clothing, Inc. v. Joe's Jeans Subsidiary, Inc., 687 F.Supp.2d 381, 392 (S.D.N.Y. 2010) (citing cases).

Regardless of the precise nature of the relationship between MSD and SolarSmart, S&K's representation of those two entities did not pertain to "essentially the same" issues that dominate this case. Defendants describe S&K's prior representation of MSD and SolarSmart as involving the "Chapter 7 Liquidation proceeding" of SolarSmart, the "MSD-Decree Signs, Inc. Asset Purchase Agreement" and the "MSD-Wachovia Loan work-out" related to the transaction between MSD and Decree Signs. See Aff. of Thomas Marino ¶ 12 (ct. doc. 45-1). These other legal matters concern discrete financial transactions having nothing to do with the alleged embezzlement of MSD's funds and Mr. Nifenecker's alleged misconduct in this action. Even if S&K "may have knowledge of facts that are relevant to the issues brought before the Court" from their prior representation of MSD and SolarSmart, the purported relationship with current concerns is simply too attenuated "to conclude that the services [counsel] provided . . . are substantially related to the issues presented in the instant Complaint." Pacheco Ross

-7-

Architects, P.C. v. Mitchell Assocs., 2009 WL 1514482, at *5 (N.D.N.Y. 2009).

Because defendants have failed to establish the first two requisite factors, this Court need not consider whether S&K had access to privileged client information in its prior representation to warrant disqualification.

B. Concurrent Representation

The Second Circuit has long recognized that it is "prima facie improper" for an attorney to represent one existing client in a matter adverse to another existing client. Hempstead Video, 409 F.3d at 133 (citing Cinema 5, Ltd. v. Cinerama, Inc., 528 F.2d 1384, 1387 (2d Cir. 1976)). In such cases, the burden is on the attorney "to show, at the very least, that there will be no actual or apparent conflict in loyalties or diminution in the vigor of his representation." Id. (emphasis in original). This burden is "so heavy that it will rarely be met." GSA Commerce Solutions, 618 F.3d at 209-210 (emphasis in original) (quoting Gluek v. Jonathan Logan, Inc., 653 F.2d 746, 750 (2d Cir. 1981)).

Similarly, Rule 1.7 of the New York Rules of Professional Conduct precludes a lawyer from engaging in representation where "representation will involve the lawyer in representing differing interests." 22 N.Y.C.R.R. § 1200.0, Rule 1.7. However, as Rule 1.7 specifies, where a conflict arises between two jointly-represented parties, the "[c]lient consent may, under appropriate circumstances, provide a basis for permitting continued

representation."  Paladino, 28 Misc.3d 1227(A), 2010 WL 2010 WL 3359550, at *2; see also Bulkmatic Transport Co. v. Pappas, 2001 WL 504841, at *4 (S.D.N.Y. 2001) ("regardless of the actual relationship between various parties . . . the relevant question is whether an attorney has fulfilled the obligation to inquire into, and inform the clients about, the possible pitfalls of joint representation").  In order to proceed, a reasonable lawyer in counsel's position must "have a reasonable belief that the attorney 'will be able to provide competent and diligent representation to each affected client.'"  Paladino, 2010 WL 3359550, at *3 (quoting Professional Conduct Rule 1.7(b)(1)).

Where there are adverse interests between the parties represented by counsel, consent from all affected parties is necessary.  See, e.g., 22 N.Y.C.R.R. § 1200.0, Rule 1.7(b) ("Notwithstanding the existence of a concurrent conflict of interest . . . a lawyer may represent a client if . . . each client gives informed consent, confirmed in writing"); Cohen v. Strouch, 2011 WL 1143067, at *5 n. 3 (S.D.N.Y. 2011) ("Even if the conflict of concurrent representation in related matters were waivable, [counsel] could not cure it without the waiver of [one client]").  In fact, the court in Anderson v. Nassau Cty. Dept. of Corrections, 376 F.Supp.2d 294, 299 (E.D.N.Y. 2005) disqualified counsel because client consent was not obtained prior to counsel's undertaking representation of adverse interests; consent given in response to a motion to disqualify did not suffice.

Mr. Nifenecker attempts to downplay S&K's role in the bankruptcy action and claims that the firm "has no further role as Chapter 7 counsel to MSD except to cooperate with any request the Trustee might have." Ct. doc. 49 ¶ 12. However, it is undisputed that Ms. Sarah Keenan is representing MSD in the bankruptcy action while Mr. Sferrazza is representing Mr. Nifenecker in this action. See In re: Manhattan Signs & Designs, Ltd., Pet. 12-70904 (docket sheet). S&K is plainly engaged in concurrent representation of MSD and Mr. Nifenecker. Therefore, the Court must examine whether defendants' allegations create adversarial interests between the parties and the effect of the Trustee's lack of consent to S&K's continued representation.

### 1. Adversarial Interests

The simple fact of joint representation where "a defendant asserts a counterclaim against one of the multiple plaintiffs represented by the same counsel" is not in itself sufficient to trigger automatically disqualification of counsel. Bulkmatic, 2001 WL 504841, at *4. Courts should distinguish between instances where "defendants have stated a viable counterclaim" which "could be said to put [non-movant's] counsel in a position where they are advocating for [one client] to the detriment of the [other client]" and those where "defendants' counterclaim has no basis in law" and "do[es] not specify any provision of law on which defendants rely for the legal existence of such counterclaims." Copantitla v. Fiskardo Estiatorio, Inc., 788

-10-

F.Supp.2d 253, 280 (S.D.N.Y. 2011). Thus, the court in Bulkmatic denied a disqualification motion where it found that the defendants' "attempt to establish the potential for an adverse relationship between [plaintiff] and its employees . . . [was] cast entirely in terms of rhetorical, often self-contradictory questions, presenting little more than hypothetical scenarios of conflict." Bulkmatic, 2001 WL 504841, at *3.

However, where a defendant's pleading "has raised a direct conflict and created adverse interests among plaintiffs" so that co-plaintiffs could "ultimately be liable to their fellow plaintiffs," disqualification is required because plaintiffs "whose pecuniary interest are in conflict with one another [have an] irreconcilable conflict in the professional allegiance of counsel [that] cannot be waived." Big Brows LLC v. Devitt, 2011 WL 3557061, at *3 (N.Y.Sup. 2011). Even where, as in this matter, the party opposing disqualification argues the movant's allegations lack merit, disqualification may be warranted. See Rodolico v. Unisys Corp., 189 F.R.D. 245, 255 (E.D.N.Y. 1999). In Rodolico, the disqualified firm represented putative class plaintiffs as well a union, which it had also represented in prior matters, that was impleaded as a third-party defendant by defendants. Rodolico, 189 F.R.D. at 255. The Court concluded that representation of the plaintiffs was improper because "their claims may ultimately be adverse" to the union. Similarly, disqualification of plaintiffs' counsel was warranted in Big Brows where defendants alleged that individual plaintiffs "participated

-11-

in the decisions upon which plaintiffs base their suit" and thus had violated fiduciary duties toward the corporate plaintiff because "litigation of the issues presented in the complaint [would] necessarily require plaintiffs . . . to defend themselves against their fellow plaintiffs' claims." Big Brows, 2011 WL 3557061, at *2.

A conflict due to concurrent representation can also occur where an attorney represents clients in two separate actions. In In re Trevis, 347 B.R. 679 (9th Cir. BAP 2006),[1] the court found a conflict where a law firm represented a trustee in bankruptcy proceeding and debtors in unrelated adversary proceeding, "even though the simultaneous representations may have nothing in common, and there is no risk that confidences from one client may be used against that client, disqualification is virtually automatic." Id., at 691 (internal citations omitted).

In contending that S&K should be disqualified for simultaneously representing MSD in the bankruptcy action and Mr. Nifenecker herein, defendants claim that documentary evidence presented suggests that Mr. Nifenecker diverted funds from MSD, resulting in a potential or actual conflict by placing MSD and Mr. Nifenecker in "adversarial legal positions." Ct. doc. 45-16, at 6. They argue that S&K, counsel for MSD in the bankruptcy action,

---

[1] "9th Cir. BAP" refers to the Ninth Circuit Bankruptcy Appellate Panel. See BAP Court Information, United States Courts for the Ninth Circuit, http://www.ca9.uscourts.gov/bap/view.php?pk_id=0000000254 (last visited July 22, 2013).

"cannot turn against it as they must in order to represent Nifenecker." Id. at 7.

As an initial matter, this Court notes that the diversion of funds is central to plaintiff's claims. Plaintiff's claims in the Amended Complaint are based in large part on allegations that during the time that defendants Ladak was an officer and he and Cherashore were employees of MSD, these defendants failed, inter alia, to enter customers and jobs on the MSD database, appropriated MSD customers as customers of MS Signs, used MSD personnel, equipment and supplies to perform jobs and retained monies received. See Am. Compl. (ct. doc. 14) at ¶¶ 40-45. Among the MSD customers and jobs that defendants appropriated, plaintiff specifically alleges that defendants used MSD materials and personnel for the fabrication, installation and maintenance of signs, light boxes and banners for Crib & Teen City Inc. ("Crib & Teen"). Id. at ¶¶ 46-47. Plaintiff alleges that Crib & Teen was a customer of Monroe Signs and that after plaintiff acquired Monroe Signs in 1999-2000, there were no records of payments on plaintiff's database or reports made by Monroe Signs of work performed for Crib & Teen. Id. at ¶¶ 119-122. Plaintiff alleges that additional work was performed for Crib & Teen in 2002, 2003, 2004, 2006 and 2007 using MSD personnel and equipment, but the jobs were not entered on the MSD database. Id. at ¶¶ 123-212. Although one or both defendants were involved in arranging for the jobs, the work was not entered on plaintiff's database and no payments forwarded to MSD. Id. passim.

Defendants allege as their Fourth Affirmative Defense that Mr. Nifenecker received cash payments from several of MSD's customers and failed to report the payments as income. See Answer to Am. Compl. (ct. doc. 16) ¶¶ 439-40.  In their motion, defendants point to evidence indicating that Crib City was known to be an established cash customer of MSD.  Robin McCabe, a sales person of MSD,[2] sent reports to Mr. Nifenecker about Crib City work and listed Crib City on a memo for commissions she was to receive.  See Decl. of Thomas Marino dated Aug. 9, 2012 ("Marino Decl.") (ct. doc. 45-6), Exhs. E-G.  Defendants provide some receipts indicating that Ms. McCabe received cash from Crib City, id. at Ex. G, and testimony by Edward Kloss, the owner of Crib City that payments in cash would be picked up by Kevin Cherashore, Ken McCabe or Robin McCabe.  Decl. of Thomas Marino dated Sept. 12, 2012 ("Marino Reply Decl."), Ex. N.  Such evidence is not sufficient to prove that Mr. Nifenecker was the person who absconded with payments intended for MSD, as contended by defendants.  However, since he had knowledge of at least some cash transactions with Crib City and, as the CEO of the company, was likely to have been aware of the production of the large signs for Crib City, defendants' contention is not entirely farfetched.  See

---

[2] Mr. Marino also states in his declaration that Robin McCabe and her husband, Ken McCabe, were owners of Monroe Signs.  Marino Decl. at ¶ 17.  However, since he provides no source for the other information he provides about the McCabes and their roles in MSD, which is not evident from the documentation provided, this Court will not consider his unsupported statements.

Reply Decl., Ex. O (ct. doc. 50-2). In any event, as defendants correctly note, "MSD . . . is in no position to determine who committed the defalcation." Id. at 9.

Not surprisingly, the Trustee likewise "believe[s] that Nifenecker's representation by a law firm without any involvement in [the Bankruptcy Action] is the best course" because "a situation may arise that threatens S&K's undivided loyalty to [MSD]." Ct. doc. 48 ¶ 10. This Court agrees with the Trustee's position that defendants' allegations have raised a reasonable possibility, although they have so far not definitively established, that Mr. Nifenecker could "ultimately be liable" to MSD for the alleged misconduct. Big Brows, 2011 WL 3557061, at *3.

While this Court is cognizant of the potential tactical use of motions to disqualify, defendants' allegations do not suffer the infirmities that have led the other courts in the cases cited by plaintiff to deny motions to disqualify. In Copantitla, the Court found that counterclaims underlying the defendants' motion for disqualification were "legally insufficient" since defendants had no basis to claim entitlement to certain set-offs which would reduce the amount of any judgment awarded to certain plaintiffs. Copantitla, 788 F.Supp.2d. at 281. As the Court observed, "if defendants ha[d] stated a viable counterclaim, then pursuing [the claim] could be said to put plaintiffs' counsel in a position where they are advocating" for one group of plaintiffs over another, and disqualification would presumably be appropriate.

Id.  If the defendants here are able to prove their factual contentions, there is little question that Mr. Nifenecker could also be liable for the payments that plaintiff seeks from defendants.

Also, unlike the defendants in Bulkmatic, who relied on broad generalizations and hypothetical questions to argue that the joint representation at issue was "fraught with potentials for conflicts," Bulkmatic, 2001 WL 504841, at *3, n. 4, defendants have come forward with some, albeit sparse, evidence in support of their motion.  However, very little discovery has yet taken place.

Although it is a close question, particularly in light of the timing of defendants' motion, the Court concludes that defendants' allegations that Mr. Nifenecker was aware of the cash payments intended for MSD, ct. doc. 16 ¶¶ 439-440, suffices to establish a potential conflict of interests between MSD and Mr. Nifenecker.  Absent the consent of both clients, S&K's continued representation of Mr. Nifenecker in this action is improper because the claims of their other client, MSD, "may ultimately be adverse" to him.  Rodolico, 189 F.R.D. at 255.  Therefore, the Court must examine the effect of the Trustee's objection to S&K's continued representation of MSD and Mr. Nifenecker.

    2.   Trustee's Objection to Representation

In the special context of a trustee or receiver in bankruptcy, a trustee has broad powers and authority over the affairs of the bankrupt debtor, as explained by the Supreme

Court's decision in Commodity Futures Trading Comm'n v. Weintraub, 471 U.S. 343 (1986). In holding that a bankruptcy trustee may assert the attorney-client privilege on behalf of a corporate debtor he represents, the Supreme Court recognized that just as "control of a corporation passes to new management, the authority to assert and waive the corporation's attorney-client privilege passes as well" to the bankruptcy trustee. Id., 471 U.S. at 348. The Supreme Court also noted that "[t]he [Bankruptcy] Code's goal of uncovering insider fraud would be substantially defeated if the debtor's directors were to retain the one management power that might effectively thwart an investigation into their own conduct." Id., 471 U.S. at 353-354. Thus, "if the Receiver is to be permitted to pursue litigation on [the debtor's] behalf, there is no reason why he should be unable to exercise his discretion to waive its corporate privilege in connection with that litigation or other contests." United States v. Shapiro, 2007 WL 2914218, at *6 (S.D.N.Y. 2007).

Although Weintraub "address[es] only whether a receiver exercises control over a corporation's privilege, the same legal principles determine whether opposing counsel should be disqualified . . . " under state rules regarding subsequent representation. Jo Ann Howard & Assocs., P.C. v. Cassity, 2012 WL 1247271, at *4 (E.D. Mo. 2012). Because "[i]n bankruptcy, the rights of a corporation with respect to its present or former counsel are controlled by the trustee, the trustee should control

the right to demand or waive the duty of loyalty or present or former counsel." In re Jaeger, 213 B.R. 578, 592 (Bkrtcy. C.D. Cal. 1997).

Notwithstanding Mr. Nifenecker's attempt to minimize the role of S&K as MSD's bankruptcy counsel, bankruptcy debtors are "under a duty to disclose information [to] assist the Trustee in his efforts to recover assets of the estate." Allboro Waterproofing Corp. v. Allboro Building Maintenance, 224 B.R. 286, 292 (E.D.N.Y. 1997). A law firm that represents a bankruptcy debtor as well as a potentially adversarial party in a civil proceeding also must possess "undivided allegiance to the [adversary party] [which] per force compels an adversarial posture at odds with those statutory duties in the bankruptcy proceeding . . ." Id. The Allboro court concluded that "allowing the simultaneous representation to continue would result in an ongoing, impermissible conflict." Allboro, 224 B.R. at 291; see also Jo Ann Howard, 2012 WL 1247271, at *3 ("when an attorney has represented a corporation before it entered bankruptcy, the courts have disqualified that attorney from representing defendants adverse to the corporation in its bankruptcy proceedings").

The Trustee's lack of consent to S&K's continued representation in this matter persuades the Court that S&K must be disqualified. As the Trustee for MSD, the Trustee has the right to demand undivided loyalty from MSD's counsel. Although he does not necessarily perceive an existing conflict based on the

evidence presented to date by defendants, the Trustee is not sufficiently confident of S&K's "undivided loyalty" to MSD while it simultaneously represents Mr. Nifenecker. Since there is actual potential for a conflict between the interests of MSD and Mr. Nifenecker, no more than this is needed to disqualify S&K; joint representation may not continue when one party does not consent.

## CONCLUSION

For the foregoing reasons, Joseph Sferrazza and Sferrazza & Keenan, PLLC are disqualified as counsel for Mr. Nifenecker. This case is stayed until August 23, 2013 to permit Mr. Nifenecker to obtain new counsel. A status conference will be held with the parties on August 27, 2013 at 10:00 a.m in Courtroom 11C.

**SO ORDERED.**

Dated: Brooklyn, New York
July 23, 2013

/s/_____
MARILYN D. GO
UNITED STATES MAGISTRATE JUDGE